. 8933

WEEKS *ET AL.* v. BRYANT, AS MAYOR, *ET AL.*

(82 S. E. 988.)

MUNICIPAL CORPORATIONS. ISSUANCE OF BONDS. OFFICERS.

1. The issuance of municipal bonds for the construction of waterworks and electric light plant under Civil Code 1912, sec. 3015, is for severable purposes, which must be separately submitted to the voters so as to afford opportunity for expression of their will as to each purpose. *Herbert* v. *Griffin,* 99 S. C. 1, 82 S. E. 986, followed.

2. Civil Code 1912, sec. 3080, *et seq.*, 26 Stats. 523, as amended by 27 Stats. 815, providing a commission form of government for certain cities, does not abrogate the provisions of Civil Code 1912, sections 3015, 3016, for commissioners of public works, where bonds are issued for the erection, construction or purchase of waterworks systems and light plants.

Before BOWMAN, J., Orangeburg, June, 1914. Reversed.

Action by John X. Weeks and William C. Smoak, freeholders and taxpayers of Orangeburg, against R. F. Bryant, as mayor; F. J. D. Felder and H. Van Ohsen, councilmen,

FOOTNOTE.—The provisions for commissioners of public works in Civil Code, sec. 3015, where bonds are issued for the erection, construction, or purchase of waterworks, light or sewerage plants, were held inapplicable in case of bonds issued under Civil Code, sec 3050, for the enlarging or extension of such plants already installed, in *Seegers* v. *Gibbes, Mayor,* 72 S. C. 532, 52 S. E. 546. See argument of attorneys for respondent in *Herbert* v. *Griffin, ante.*

composing the city council of Orangeburg, to enjoin the issuance of certain municipal bonds, attempted under the provisions of Civil Code, 1912, sec. 3015, for the establishment of a waterworks and an electric light plant. The decree of the Circuit Judge, omitting his review of certain decisions, was as follows:

This action is brought by the plaintiffs as citizens and taxpayers of the city of Orangeburg, to enjoin the issue of sixty thousand dollars of bonds of the city of Orangeburg, which the defendants, as mayor and councilmen of the said city, have determined to issue, and have entered into a contract for the sale of said issue of bonds. The plaintiffs set out in their complaint all the steps taken by the city council of Orangeburg, and the complaint and exhibits attached show fully the proceedings preparatory to the election held on the 29th day of April, 1913, upon the question of issuing the said bonds, and alleges in terms that all the votes cast at said election were in favor of the issuing of said bonds, save three votes, the number of ballots cast being ninety-nine— ninety-six thereof being in favor of said bonds, and three thereof being opposed to said bonds. * * *

The plaintiffs, in their complaint, attack the validity of said bonds upon four grounds, and ask that the defendants, the city council of Orangeburg, be enjoined from issuing said bonds and selling the same for the reasons stated in the four grounds of objection.

The first is as follows:

That "at said election held April 29, 1913, the question of issuing bonds for a waterworks and electric light plant was submitted to the voters of the city of Orangeburg as a single question or proposition, and no opportunity was given to the voters to vote upon said question or proposition separately. Whereas, it is submitted that sec. 3015 of the Code of Laws of South Carolina, 1912, vol. I, and sec. 5 of article VIII of the Constitution of South Carolina, 1895, which authorizes the issuance of said bonds, required as a condi-

tion precedent thereto, that the question of issuing bonds for waterworks, and the question of issuing bonds for an electric light plant, shall be voted for separately, at an election or electons."

The plaintiff, to sustain this position, rely upon four cases which have been decided by our Supreme Court in the past few years, namely: *Ross* v. *Lipscomb,* 83 S. C. 136, 65 S. E. 451; *Johnson* v. *Roddey,* 83 S. C. 462, 65 S. E. 626; *Chase* v. *Gilbert,* 83 S. C. 546, 65 S. E. 735, and *Ex Rel. Watkins* v. *Brasington,* mayor, 93 S. C. 447, 76 S. E. 1086. The plaintiffs contend that these cases are conclusive of this question and sustain their contention, but we do not think so, and do not so understand from a reading of the cases cited. * * *

We think that the case at bar, now under consideration, presents a different state of facts, and a different proposition from any of the cases cited. In this case the petition signed by a majority of the freeholders, as shown by the tax books of the said city of Orangeburg, and about which there is no dispute, was in the following words: "We, the undersigned freeholders of the said city of Orangeburg, and being a majority of the freeholders of the said city of Orangeburg, as shown by the tax books of the said city of Orangeburg, do hereby petition the said city council of Orangeburg, that an election be ordered by the said city council of Orangeburg, at which election shall be submitted to the freeholders, qualified voters, and qualified registered electors of the said city of Orangeburg, the question of issuing coupon bonds of the said city of Orangeburg in the sum of sixty thousand ($60,000.00) dollars, for the purpose of establishing and maintaining a waterworks and light plant in the said city of Orangeburg, the proceeds of said bonds to be applied solely and exclusively to the establishment and maintenance of a waterworks and lighting plant for the use of the said city of Orangeburg, and its citizens, as provided by law, etc." It apears from this petition that there was but a single propo-

sition to be voted for, namely, the establishment of a combination, single or unit plant, to be used for the dual purpose of furnishing both water and generating electric lights for the city of Orangeburg.

The answer of the defendants sets forth, and the allegations are admitted by the plaintiffs, that the purpose and intention of issuing said bonds was to establish a single plant, and to operate and maintain the same for the dual purpose of supplying water and electric lights for the city of Orangeburg and the citizens thereof, and that the proceeds of the sale of said bonds are to be applied solely and exclusively to establish, operate and maintain a single or unit plant, and said proceeds are to be expended by one and the same department of the city, the operation of the said single or unit plant to supply both water and lights to the said city of Orangeburg and its citizens.

That the said combination or unit plant is to be located on the North Edisto River, about one-half mile from the city of Orangeburg, and the water for the said city is to be forced and pumped through the mains into the reservoirs of said city for the use of said city and its citizens; and the electric lights to be generated by the same plant, transmitted and conveyed thence into the said city of Orangeburg for the use of the said city and its citizens; and that the said plant and entire system is to be under one and the same management. And that by reason of the fact that the same site, motive power, machinery, materials, pipes, fixtures and appurtenances are to be used in the operation of the said plant for supplying both electric lights and water to the said city, the officials of the city were unable to estimate separately as to the cost of that part of the plant which was to furnish water and that part of the plant which was to generate and transmit electric lights into the said city. That the voters were well informed at the time of the election of the purpose of this single combination or unit plant.

In the case of the city of *Chillicothe* v. *Wilder,* 200 Mo. 97, 98 S. W. 594, the question of a single plant for waterworks and electric lights was before the Court, and the Court clearly held that this might be submitted as a single proposition, and was not a submission of a proposition involving two questions, as it clearly appears that it was the purpose to erect one plant, on one site, to be conducted under one management.

It seems to us that the test, "Whether the proposition for issuance of municipal bonds is single so that it can not be submitted to the voters in combination, is not its ability to stand alone, but whether or not the several parts of the project and the component parts of the plant are so related, they form in fact but one single or rounded whole; whether the two purposes are so intimately related and connected and interwoven that they can not be separated."

In all respects, the case at bar clearly conforms to this test, and complies with its requirements. We, therefore, hold that the contention of the plaintiffs on this ground is not supported and can not be sustained. The plant proposed to be erected is a single, combination or unit plant, and there was but a single proposition to be submitted to the voters at the election held upon the issuing of bonds in question on the 29th day of April, 1913.

The second ground of objection urged by the plaintiffs against the validity of the proposed bond issue is that the precise question for which said bonds were to be issued was not set forth in the petition, and that the ordinance or resolution ordering said election submitted a different proposition. In other words, that the language used in the petition signed by the majority of the freeholders was not the same in wording as that used in the resolution providing for said election. The words setting out the purpose for the issue of said bonds used in the petition were as follows: "For the purpose of establishing and maintaining a waterworks and electric light plant." The words used in the resolution

ordering said election were as follows: "For the purpose of establishing, maintaining, constructing and operating a waterworks and electric light plant in the city of Orangeburg." In the petition "establishing and maintaining" are used, and in the resolution ordering the election the same words, "establishing and maintaining," are used, with the additional words, "constructing and operating" a waterworks and electric light plant. The word "establishing" has the same meaning in large measure as "constructing," and the word "maintaining" implies "operation." So that the words "constructing and operating" were simply, in fact, a repetition of the words "establishing and maintaining." The difference in the meaning, if any, is so slight that it amounts to nothing. Especially when it is alleged in the answer and admitted by the pleadings that the voters well knew the purpose for which said bonds were to be issued. Judge Woods, in the case of *Dick* v. *Scarborough*, 73 S. C. 153, 53 S. E. 86, says: "It is true power to hold an election to authorize the issuance of bonds to *purchase* waterworks, is not given in this statute by the use of the word 'purchase,' to establish waterworks may be accomplished by purchase as well as by construction. Establishing waterworks obviously here means an acquirement and inauguration of the system of waterworks as a muncipal enterprise, and as a municipal property, by their construction or purchase." The learned Judge further continues: "It thus appears that the municipal voter with full knowledge, by the election, gave their assent to the bond issue, etc.," and holds the issue a valid one.

We think that the precise question was submitted to the voters at the election held on April 29, 1913, and that this contention can not be sustained.

. The next and third ground of objection urged by the plaintiffs to the validity of the bonds is as follows: "That sec. 3015 of the Code of Laws of South Carolina, 1912, vol. I, under which said bonds have been voted, provides, among

other things, that when said bonds are issued, they shall be turned over to the commissioner of public works *for sale,* and it is submitted that the city of Orangeburg being now operated under the commission form of government, as provided by law, has no board of commissioners of public works, the said board having been abolished by operation of law upon the adoption of the commission form of government by the city of Orangeburg, and the present city *council,* under the commission form of government, now in operation, has no authority to issue said bonds or to enter into a contract for the sale of same."

It is admitted that the city of Orangeburg is now operated under the commission form of government, which provides that cities and towns of not less than four thousand inhabitants, nor more than ten thousand inhabitants, may adopt this form of government.

The act of the legislature creating this commission form of government makes no provision for commissioners of public works. But, on the contrary, sec. 10 of the act of 1910, 26 Stats. 523; Civil Code 1912, sec. 3080, creating the commission form of government, under which the city of Orangeburg is now operated, provides as follows: "The council shall have, possess, and exercise all executive, legislative, and judicial powers, the duties conferred upon said city or heretofore belonging to it, etc." Sec. 11 of the same act (Civil Code, sec. 3081), as amended by the act of 1912, sec. 6, 27 Stats. 815, provides as follows: "The executive and administrative powers and duties shall be by council distributed among three departments, of which each of the members of council shall be a superintendent of one, and the assignments or reassignments shall be made by the mayor, or by a vote of the council if they deem it necessary, etc." It will thus be seen that the act creating the commission form of government and the amendments thereto devolve all the duties and powers of cities, under this form of government, upon the city council, and the executive and administrative

powers are to be distributed among three departments. This means all the duties and powers, both executive and administrative, shall be distributed among these three departments. The mayor and each of the councilmen being in charge of one department. If the board of commissioners of public works has been abolished by operation of law, as contended by the plaintiffs, then all the duties and powers exercised by the commissioners of public works under the old form of government are now conferred on the city council under the commission form of government. The act clearly says, "All duties and powers belonging to the city, of every kind, are conferred upon the city council." The act creating the commission form of government is broad enough and sufficiently comprehensive in its terms to confer upon the city council all the powers and duties appertaining to the city under the old form of government, including the powers and duties and responsibilities of the commissioners of public works. And the present city council of Orangeburg, as successors to the city council under the old form of government, have full power to take up and complete any enterprise begun by the former council, and I so hold.

The fourth and last objection urged against the validity of said bonds is as follows: "That the registration books were opened twenty days before said election, and closed ten days before said election, contrary to the provision of sec. 11 of article II of the Constitution of South Carolina, 1895, which requires that 'the registration books shall close at least thirty days before an election, during which time transfers and registration shall not be legal.' All the voters at said election having been registered by the supervisor of registration for the city of Orangeburg within the thirty days immediately preceding said election, and the registration books having been closed ten days before said election instead of thirty days, as required by the Constitution and laws of the State of South Carolina."

It is true that sec. 11 of article II of the Constitution does provide that the registration books shall be closed thirty days before an election and that during that time transfers and registration shall not be legal. An inspection of this section of the Constitution clearly shows that the section applies to county and State registration books, and not to municipal registration books. The following section of the Constitution provides as follows: "The General Assembly shall provide for the registration of all voters before any election in municipalities, etc." (Sec. 12, art. II.) By the act of 1908, 25th statutes, 1026, now sec. 231, vol. I of the Code of Laws of 1912, the registration law relating to municipalities, was amended, and said amendment provides: "That twenty days prior to any special election to be held, as aforesaid, the books of registration shall be open for the registration of the names of qualified electors therein, and shall remain open for a period of ten days." This amendment was passed by the legislature pursuant to the power given in sec. 12 of art. II of the Constitution, and there is no conflict between the Constitution and the amending act.

But, besides, it is not necessary to discuss this question, as it has been settled by our Supreme Court. The case of *Fowler* v. *Town Council of Fountain Inn,* 90 S. C. 354, 73 S. E. 626, decides that the amendment to the existing law relating to muncipal registration, found in 25th statutes, 1026, providing for opening municipal books of registration twenty days before and keeping them open for ten days, does not violate sec. 11 of article II, providing that State books of registration shall not be open for thirty days before any election. Mr. Justice Hydrick, in his opinion, says: "It clearly appears from the context, that is, from the preceding and following sections, that the registration books, mentioned in sec. 11, are the county registration books, in which electors in State and county elections are registered, for the very next section (sec. 12) deals specifically with the registration of electors in municipal elections, and provides:

'Electors in muncipal elections shall possess the qualifications and be subject to the disqualifications herein prescribed.' The production of a certificate of registration from the registration officers of the county as an elector at a precinct included in the incorporated city or town in which the voters desire to vote is declared a condition prerequisite to his obtaining a certificate of registration for municipal elections."

And Mr. Justice Hydrick holds, in reviewing the case of *Gunter* v. *Gayden,* 84 S. C. 48, 65 S. E. 948, relied on in this case, as follows: "There is nothing in the opinion in that case (*Gunter* v. *Gayden*) which sustains the contention that the provision of the Constitution above quoted from sec. 11 requires the books of a city or town to be closed thirty days before an election. There being no provision in the Constitution as to when such books shall be closed, the legislature may fix any time within its discretion." This case is conclusive upon this point.

Having carefully reviewed all the objections urged by the plaintiffs against the election held on the 29th day of April, 1913, and the proceedings had for issuing the bonds in question, I think that none of said objections are well founded, and they should not be sustained by the Court, and I hold that said election and all proceedings were regular, and that said bonds are valid.

It is, therefore, ordered, adjudged and decreed, that the prayer of the complaint for an injunction against the issuing of sixty thousand ($60,000.00) dollars of bonds of the city of Orangeburg, for the purpose indicated and set forth in the pleadings be, and the same is hereby, refused, the demurrer to the answer is overruled and the complaint is hereby dismissed.

From this decree the plaintiff appealed upon the following exceptions:

I. That his Honor erred in holding that the plant proposed to be erected is a single, combination or unit plant, and

2—99

that there was but a single proposition submitted to the voters at the election held upon the issuing of the bonds in question on the 29th day of April, 1913.

The error being that there were two propositions submitted to the voters of the city of Orangeburg on the 29th day of April, 1913, because the petition plainly and unmistakably stated that "the proceeds of said bonds were to be applied solely and exclusively to the establishment and main-. tenance of a waterworks and lighting plant for said city of Orangeburg, etc.," and the resolution ordering said election stated it was "for the purpose of establishing, maintaining, contsructing and operating a waterworks and electric light plant in the said city of Orangeburg,"—thus undoubtedly submitting two propositions to be voted on as a single question, because a waterworks and electric light plant are unquestionably two plants.

II. That his Honor erred in holding that the petition praying for said election upon the question of issuing bonds was the same and precise question set out in the resolution ordering the election on said bonds.

The error being that they were not the same and precise question, for the reason that the petition stated it was "for the purpose of establishing and maintaining a waterworks and lighting plant," and the resolution ordering said election stated it was "for the purpose of establishing, maintaining, constructing and operating a waterworks and electric light plant in the said city of Orangeburg"—a strict construction of section 3015, vol. I, Code of Laws of South Carolina, 1912, being thereby violated.

III. That his Honor erred in holding that the present city council of Orangeburg, under the commission form of government, are successors to the city council under the old form of government, with full power to take up and complete any enterprise begun by the former council.

The error being that there is no distinct provision for the city council under the commission form of government to

sell municipal bonds for the erection of a waterworks, etc., as is provided under section 3015, Code of Laws of South Carolina, 1912, vol. I.

IV. That his Honor erred in holding that the opening of the registration books twenty days before said election and closing them ten days before said election was not in contravention of section 11 of article II of the Constitution of South Carolina, 1895.

The error being that said registration books should have been closed at least thirty days before said election, during which time transfers and registration should not have been allowed—which is the main provision of said section 11 of article II.

*Mr. J. Stokes Salley,* for appellant, cites: 83 S. C. 136, 462, 464, 546; 93 S. C. 447; 1 Code of Laws 1912, sec. 3015; Const., art. II, sec. 11.

*Mr. Wm. L. Glaze,* for respondent.

September 22, 1914.

The opinion of the Court was delivered by MR. JUSTICE HYDRICK.

The principal question in this case, which is raised by the first exception, is decided by the case of *Herbert* v. *Griffith,* 99 S. C. 1, 82 S. E. 986, recently filed.

The third exception is also sustained. The statute under which such bonds may be issued distinctly provides that, at the election for bonds, the commissioners of public works shall be elected, and prescribes their powers and duties. There is nothing in the act providing a commission form of government which expressly or impliedly abrogates that provision of the statute.

Judgment reversed.